# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LEA H. TAYLOR, JR., | Civil Action No. 13-6594 (PGS) (DEA) |
| *Plaintiff,* | |
| v. | |
| STATE OF NEW JERSEY, STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, STATE OF NEW JERSEY DIVISION OF CHILDREN'S SYSTEM OF CARE, JEFFREY J. GUENZEL, CLARENCE WHITAKER, BETTY M. NG, and LISA T. HIBNER, | **MEMORADUM** |
| *Defendants.* | |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants State of New Jersey, State of New Jersey Department of Children and Families ("DCF"), State of New Jersey Division of Children's System of Care ("CSOC"), Jeffrey J. Guenzel, Clarence Whittaker, Betty M. Ng, and Lisa T. Hibner's (collectively, "Defendants") Motion to Dismiss *pro se* Plaintiff Lea H. Taylor, Jr.'s ("Plaintiff" or "Taylor") Complaint for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and/or for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative, Motion for a More Definite Statement pursuant to FED. R. CIV. P. 12(e) (ECF No. 14). Plaintiff, an Administrative Analyst with the DCF, alleges that Defendants subjected him to racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), negligently transferred him to another division within the DCF, conspired to reassign

him to another position within the DCF in violation of 42 U.S.C. § 1985, breached the Collective

Bargaining Agreement between his union, the Communications Workers of America ("CWA"), and

the State of New Jersey, and defamed him in violation of state law. The Court decides this matter

without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth herein,

Defendants' Motion to Dismiss is granted in its entirety.

## I.   BACKGROUND

### A. Parties

Plaintiff Lea H. Taylor, Jr., an African-American male with a Master's Degree in Public

Administration, is a resident of New Brunswick, New Jersey. He previously served as an

Administrative Analyst 1, Civil Service Level 29, in the Division of Children's System of Care

("CSOC") (formerly the Division of Child Behavioral Health Services) within the New Jersey

Department of Children and Families ("DCF"). Defendant DCF, a Cabinet-level Department of the

State of New Jersey, provides various services throughout the State for children and youth with

intellectual and/or developmental disabilities. Defendant CSOC, a Division of the DCF, is

responsible for determining eligibility for childhood developmental disability services provided by

the State. Defendant Jeffrey J. Guenzel previously served as Director of the New Jersey Division of

Child Behavioral Health Services and, later, as Deputy Commissioner of the DCF. Defendant

Clarence Whittaker currently serves as Manager of Community Services at the CSOC. He previously

served in the DCF Office of Legal Affairs where he managed the Department's Administrative

Hearings Unit. Defendant Betty M. Ng previously served as a Legal Specialist within the DCF.

Defendant Lisa T. Hibner serves as a Hearing Officer for the State of New Jersey. The individually

named Defendants were all employees of the State of New Jersey at the time of the alleged facts

giving rise to this action.

**B. Factual Background**

Plaintiff Lea H. Taylor, Jr. has been employed by the State of New Jersey as an

Administrative Analyst since 2003. In 2008, he was hired by Brian Hancock, then-Deputy Director

of the Division of Child Behavioral Health Services within the DCF, to serve as a database manager

for the Division. (Compl. at 4). In August 2008, despite his belief that he would serve as lead

database manager, Plaintiff was informed by Deputy Director Hancock that he would instead be

reporting to Rob Capizzano, a Caucasian male whose educational qualifications and civil service

level were allegedly inferior to those of the Plaintiff. (*Id.*). In late-2010 or early-2011, shortly after

he had assumed his position as Director of the Division of Child Behavioral Health Services,

Defendant Guenzel allegedly stripped Plaintiff of the privilege of "speak[ing] for his service line[]"

and assigned that privilege to a Caucasian woman within the Division. (*Id.* at 4-5).

On October 2, 2012, while working as an Administrative Analyst within the Division of

Child Behavioral Health Services, Plaintiff was summoned to a meeting with his direct supervisor,

Defendant Clarence Whittaker, and then-Deputy Commissioner Guenzel. (*Id.* at 5). At that meeting,

Guenzel informed Plaintiff that he had been selected to fill a vacant position in the Office of

Facilities Management ("OFM") and that he would be transferred to that position effective October

9, 2012. In response, Plaintiff allegedly "asked during the meeting that he be represented by union

representation[,]" however, according to Plaintiff, his request "was roundly dismissed[.]"[1] (*Id.*).

Plaintiff ultimately objected to the transfer based on his belief that the position in the OFM, which

involved some clerical work and the purchasing of computer products, was beneath an employee

with his educational qualifications and civil service credentials. (*Id.*).

---

[1] Plaintiff alleges that he was "unable to get union assistance" because Shirley Searles, the Quality Assurance
Coordinator for the Division of Child Behavioral Health Services who is not a party to this action, told
representatives of the Communications Workers of America ("CWA") that Plaintiff "did not do anything" and
should be transferred to another position. (Compl. at 5).

Following his transfer to the OFM, Plaintiff filed a grievance which was addressed during an October 12, 2012 meeting chaired by Defendant Lisa T. Hibner. (*Id*.). According to Plaintiff, Defendant Hibner "erroneously applied the CWA contract for temporary assignment[]" when evaluating Plaintiff's grievance, and thus, she "violated the CWA contract[.]" (*Id*.). More specifically, Plaintiff contends that Defendant Hibner violated the CWA Agreement by failing to properly consider Plaintiff's level of seniority when evaluating the appropriateness of the transfer. (*Id*.). Plaintiff subsequently appealed Defendant Hibner's decision and the appeal was denied. (*Id*.). In November 2012, Plaintiff allegedly filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"). On August 19, 2013, he allegedly received a right-to-sue letter from the EEOC.[2]

On October 31, 2013, Plaintiff filed a five-count Complaint in the United States District Court for the District of New Jersey.[3] In Count One, Plaintiff alleges that Defendants subjected him to racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*. Specifically, Plaintiff contends that his "reassignment [to the OFM] by Defendants Guenzal and Whit[t]aker was based on racism" and that "[d]iscrimination is pervasive in the Division of Children's System of Care." (*Id*. at Count One, ¶¶ 36, 48). In Count Two, Plaintiff asserts a claim for negligence against all Defendants based on his transfer to the OFM. According to Plaintiff, "[a]ll of the Defendant[s] had a legal duty of due care towards [him] as an employee of the Division and the State of New Jersey[]" and "Defendants violated [that] duty of care by involuntarily reassigning [him.]" (*Id*. at Count Two, ¶¶ 8, 20). In Count Three, Plaintiff alleges that all Defendants conspired to unlawfully reassign him to the OFM in violation of 42 U.S.C. § 1985. (*Id*. at Count

---

[2] While Plaintiff alleges that he properly filed a charge with the EEOC in accordance with requirements of 42 U.S.C. § 2000e-5(e)(1), he failed to attach the EEOC charge and right-to-sue letter to his Complaint and neglected to state the basis for the charge or indicate against whom it was filed.

[3] Since the Plaintiff is a *pro se* party, the Court has an obligation to construe his submissions broadly. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

Three, ¶¶ 1-21). In Count Four, Plaintiff alleges that Defendants breached the State's collective

bargaining agreement with the CWA by transferring him to the OFM without having considered his

level of seniority or provided sufficient notice. (*Id.* at Count Four, ¶¶ 1 - 42). Finally, in Count Five,

Plaintiff asserts a state law defamation claim against all Defendants. Plaintiff now seeks

compensatory and punitive damages against all Defendants and reinstatement to his former position

in the CSOC. On December 17, 2013, Defendants filed the instant Motion to Dismiss.

## II.    DISCUSSION

### A. Motion to Dismiss Standards

#### 1.  FED. R. CIV. P. 12(b)(1)

Pursuant to FED. R. CIV. P. 12(b)(1), the Court must dismiss a complaint, in whole or in part,

if the plaintiff fails to establish that the Court has jurisdiction over the claim. The plaintiff, as the

party asserting jurisdiction, "bears the burden of showing that the case is properly before the court at

all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993).

Pursuant to 28 U.S.C. § 1331, federal district courts have jurisdiction over "all civil actions arising

under the Constitution, law, or treaties of the United States."[4] "Federal question jurisdiction arises

where federal law creates the cause of action, or where the complaint, on its face, poses a federal

question." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 Fed. App'x 289, 292 (3d Cir.

2010) (citing *Club Comanche, Inc. v. Gov't of V.I.*, 278 F.3d 250, 259 (3d Cir. 2002)).

#### 2.  FED. R. CIV. P. 12(b)(6)

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint if the plaintiff "fail[s] to

state a claim upon which relief can be granted[.]" When reviewing a motion to dismiss on the

---

[4] "An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." *Jayme v. MCI Corp.*, 328 Fed. App'x 768, 770 (3d Cir. 2008).

pleadings, courts are required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "The inquiry is not whether [a] plaintiff[] will ultimately prevail in a trial on the merits, but whether [he or she] should be afforded an opportunity to offer evidence in support of [his or her] claims." *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). The Supreme Court has clarified, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The court may consider "undisputedly authentic document[s] that . . . [are] attache[d] as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* "[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may [also] be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat*

6

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'"). The Court may not, however, "rely on other parts of the record in making its decision." *See Vartan v. Wells Fargo Bank Nw., N.A.*, 2012 U.S. Dist. LEXIS 54467, at *9-10 (M.D. Pa. Apr. 18, 2012) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).

To determine whether a complaint is plausible on its face, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### 3. FED. R. CIV. P. 12(e)

Pursuant to FED. R. CIV. P. 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." While a plaintiff may comply with the standard set forth in FED. R. CIV. P. 8(a)(2), his complaint is not insulated from a motion for a more definite statement. *See Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233 (D.N.J. 2003). In fact, the purpose of Rule 12(e) "is to require greater specificity than what is ordinarily required under Rule 8(a)(2) in

that narrow class of cases where the want of specificity precludes the defendant from properly framing an answer to a legally sufficient complaint." *Id.* However, "to the extent Rule 12(e) can be implemented to require more than what is required by Rules 8(a)(2) and 12(b)(6), and may thereby be prone to abuse by defendants, 'its exercise should be cast in the mold of strictest necessity.'" *Id.* (citing *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142 (D. Del. 1960)).

### B. Count One: Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

In Count One, Plaintiff alleges that all Defendants subjected him to racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*. Specifically, Plaintiff alleges that his October 9, 2012 transfer from the Division of Child Behavioral Health Services to the OFM "was based on racism[.]" (Compl. at Count One, ¶ 36). Furthermore, Plaintiff identifies several instances in which other African American employees within the CSOC were allegedly "treated differently" by Division supervisors to demonstrate that "[d]iscrimination is pervasive in the . . . CSOC." (*Id.* at Count One, ¶¶ 8, 26). Accordingly, Plaintiff demands "an injunction restoring him back to his previous position and title in the [CSOC] together with attorney[s'] fees and costs[.]" (*Id.* at Count One, ¶ 51).

Defendants argue that Count One should be dismissed for three reasons. First, Defendants argue that Plaintiff's allegations fail to establish a *prima facie* claim of employment discrimination under Title VII. Specifically, Defendants contend that "Plaintiff fails to establish the third prong of a *prima facie* claim of employment discrimination under Title VII, [namely] that he was subjected to any adverse employment action." (Defs.' Br. at 9). According to Defendants, "Plaintiff did not suffer any change in pay, benefits or Civil Service Level . . . [and he] cannot sustain a Title VII claim based solely upon his preference for a particular position." (*Id.* at 10). Second, Defendants argue that the Eleventh Amendment bars "federal courts . . . from awarding equitable relief against a state[,]" and,

therefore, "Plaintiff's claims for injunctive relief . . . as asserted against the State of New Jersey, [the] DCF[] and [the] CSOC . . . should be dismissed." (*Id.* at 10-11). Third, Defendants argue that "[t]o the extent Plaintiff seeks an injunction against the Individual Defendants, the claim should also be dismissed because these individuals do not have the authority to provide the relief sought." (*Id.*). According to Defendants, "[b]ecause Plaintiff has not asserted his claims for injunctive relief against an appropriate party with authority to transfer Plaintiff to a different office in the DCF, [his] claim should be dismissed." (*Id.*). The Court will address these arguments in turn.

### 1. Title VII Claim Against Defendants Guenzel, Whittaker, Ng and Hibner

Plaintiff's Complaint asserts that each of the individually named Defendants engaged in discriminatory actions against him in violation of Title VII. Third Circuit jurisprudence, however, is clear that Title VII does not subject individual supervisory employees to liability. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("Congress did not intend to hold individual employees liable under Title VII."); *Newsome v. Admin. Office of the Court of the State of N.J.*, 51 Fed. App'x 76, 79 n.1 (3d Cir. 2002) ("it is settled that Title VII does not provide for individual liability."); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (stating that "individual employees are not liable under Title VII."). Here, Plaintiff's Complaint clearly indicates that each of the individually named Defendants is a current or former supervisor or employee of the State, the DCF or the CSOC. Accordingly, to the extent that Plaintiff's Title VII claim in Count One is asserted against Defendants Guenzel, Whittaker, Ng and Hibner, that claim is dismissed with prejudice.

### 2. Title VII Claim Against Defendants State of New Jersey, DCF and CSOC

In addressing Plaintiff's Title VII claim against Defendants State of New Jersey, the DCF and the CSOC, the Court will first consider Defendants' argument that that claim should be

dismissed because it is barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. As developed, the Eleventh Amendment affords states and state agencies immunity from suits brought by citizens in federal court. *MCI Telecom. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503-04 (3d Cir. 2001); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). That immunity is not absolute, however, and three primary exceptions have been established that limit the breadth of the Eleventh Amendment: (1) congressional abrogation; (2) waiver by the state; and (3) suits against individual state officers for prospective injunctive relief and declaratory relief. *MCI*, 271 F.3d at 503.

Title VII is one of the specific instances where Congress has expressly abrogated the states' Eleventh Amendment immunity. In *Fitzpatrick v. Bitzer*, the Supreme Court "found present in Title VII . . . , the 'threshold fact of congressional authorization' to sue the State as employer, because the statute made explicit reference to the availability of a private action against state and local governments in the event the Equal Employment Opportunity Commission or the Attorney General failed to bring suit or effect a conciliation agreement." *Quern v. Jordan*, 440 U.S. 332, 344, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 n.1, 449 n. 2, 452, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976)). It follows, therefore, that if the State of New Jersey, the DCF or the CSOC are properly defined as Plaintiff's employer, they would not be protected by the Eleventh Amendment. *See Shawer v. Indiana Univ. of Pa.*, 602 F.2d 1161, 1163 (3d Cir. 1979) ("It is therefore clear beyond question that when Congress . . . extended Title VII to state governments, it did so pursuant to Section 5 of the Fourteenth Amendment and thereby abrogated any existing

immunity of the states from liability for discriminatory employment practices."). Accordingly, contrary to Defendants' assertion, the Court finds that Plaintiff's Title VII claim against the State of New Jersey, the DCF and the CSOC is not barred by the Eleventh Amendment.

While the Court finds that Plaintiff's Title VII claim against the State of New Jersey, the DCF and the CSOC is not barred by the Eleventh Amendment, the Court must now consider whether Plaintiff has alleged sufficient facts to establish a claim for discrimination under Title VII. Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In the absence of direct evidence, a plaintiff may prove discrimination under Title VII through the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. *Id.* at 802. In order to establish a *prima face* case of race discrimination under Title VII, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was otherwise qualified for the position; (3) that he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). Once the plaintiff establishes a *prima facie* case for discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to establish by a preponderance of the evidence that the employer's articulated reason was in fact pretext for discrimination. *Id.*; *see also Terry v. Town of*

*Morristown*, 446 Fed. App'x 457, 461 (3d Cir. 2011). To prove pretext, the plaintiff must "submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)). A plaintiff "may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 867 A.2d 1133, 1138 (N.J. 2005). In this instance, Plaintiff has not presented, nor does he allege, that there is any direct evidence of race discrimination. Accordingly, his Title VII claim is analyzed pursuant to the *McDonnell Douglas* framework.

Here, after viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish a *prima facie* case of discrimination. Plaintiff is able to establish the first two elements of his *prima facie* case: (1) Plaintiff is an African American and thus a member of a protected class and (2) Plaintiff was qualified to serve as an administrative analyst within the CSOC as evidenced by his ten-plus years of civil service and his educational background. The allegations in the Complaint, however, fail to establish that Plaintiff was subjected to any adverse employment action based upon his status as an African American. While Plaintiff contends that his involuntary transfer to the OFM and earlier denial of his ability to "speak for his service line" constituted adverse employment actions within the meaning of Title VII, he fails to allege that those actions resulted in a significant change in his employment status. As this Court has previously recognized, "[a]lthough employment decisions such as transfers . . . may, in some circumstances, suffice to satisfy the third element of a *prima facie* case of discrimination, . . . a plaintiff must still make a showing that [he] incurred a 'serious and tangible' alteration of [his] compensation, terms,

conditions or privileges of employment." *Bray v. Schlumberger Tech. Corp.*, 2012 U.S. Dist.

LEXIS73838, at *11-12 (D.N.J. May 29, 2012) (citing *Swain v. City of Vineland*, 457 App'x 107,

110-11 (3d Cir. 2012)). Here, the Court finds that Plaintiff has failed to make such a showing and,

instead, relies primarily on his own, unsubstantiated opinion that the position within the OFM is

subjectively less desirable and significant than his former position within the CSOC. As such,

Plaintiff has failed to meet his initial burden of establishing a *prima facie* case of unlawful

discrimination. *See Swain*, 457 App'x at 110-11 (stating that a plaintiff's "subjective preference for

[a] position . . . is insufficient to establish an adverse employment action."); *see also Williams v.

Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) ("[A] *purely* lateral transfer, that is a

transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially

adverse employment action.").

     Plaintiff has also failed to provide evidence to support a finding that Defendants acted "under

circumstances that raise an inference of discriminatory action[.]" *Sarullo*, 352 F.3d at 797. In an

attempt to meet his burden at step four, Plaintiff asserts that "[d]iscrimination is pervasive in the

[CSOC]" because "there [are] no African American [civil service] level 29 [employees] who [are] . .

. supervisor[s]" and because "[t]he only level 29 supervisors in the [CSOC] . . . are Caucasians."

(Compl. at Count One, ¶¶ 8, 10-11). In making this assertion, Plaintiff conveniently disregards the

fact that his direct supervisor, Defendant Whittaker , is African American. While Plaintiff contends,

without substantial evidence, that "every African American, outside of management and support and

[CSOC Quality Assurance Coordinator] Shirley Searles, has endured some discriminatory action[,]"

that contention is insufficient to give rise to an inference that Plaintiff himself was discriminated

against when reassigned to the OFM. *See, e.g., Blue v. Def. Logistics Agency*, 181 F. App'x 272, 274

(3d Cir. 2002) ("In order to be useful in establishing a prima facie case, statistics must assist the

plaintiff in proving discrimination in [his or her] particular case."). Because Plaintiff fails to set forth evidence suggesting that discriminatory animus played any role in Defendants' decision, he has not met his burden at step four of his *prima facie* case. *See Rene v. Lidestri Foods, Inc.*, 2010 U.S. Dist. LEXIS 122246, at *17 (D.N.J. Nov. 17, 2010) (stating that "a prima facie case must support the inference that Plaintiff was discriminated against *because of* his race, color, or national origin - it is not prima facie discrimination to simply be a member of a protected class who is subjected to a negative employment decision."). Accordingly, to the extent that Plaintiff's Title VII claim in Count One is asserted against Defendants State of New Jersey, the DCF and the CSOC, that claim is dismissed with prejudice.

### C. Count Two: Negligence

In Count Two, Plaintiff asserts a claim for negligence against all Defendants based on his transfer to the OFM. He contends that "[a]ll of the Defendant[s] had a legal duty of due care towards [him] as an employee of the Division and the State of New Jersey[]" and "Defendants violated [that] duty of care by involuntarily reassigning [him.]" (*Id.* at Count Two, ¶¶ 8, 20). Accordingly, Plaintiff seeks compensatory damages in the amount of $50,000 and punitive damages in the amount of $300,000. (*Id.* at Count Two, ¶ 31). Defendants seek dismissal of Plaintiff's negligence claim on the grounds that Plaintiff has failed to comply with the notice requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:1 *et seq.* ("NJTCA" or the "Act").

The NJTCA provides that "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. The Tort Claims Act further describes the various information that a claim must include, N.J.S.A. 59:8-4, and instructs that "[a] claim for damage or injury arising under this act against the State shall be filed either with

(1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission[,]" while "[a] claim for injury or damages arising under this act against a local public entity shall be filed with that entity." N.J.S.A. 59:8-7. Further, "[a] claim shall be presented to the public entity by delivering it to or mailing it certified mail to the office of the Attorney General or the office of the State agency allegedly involved" or "may be presented to a local public entity by delivering it or mailing it certified mail to the entity." N.J.S.A. 59:8-10. As Defendants correctly point out, "[a] claim relating to a cause of action . . . for injury or damage to person . . . [must] be presented ... not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8. The "claimant shall be forever barred from recovering against a public entity or public employee if ... [t]he claimant failed to file the claim with the public entity within 90 days of accrual of the claim[.]" *Id.* The Court may only permit a late Notice of Claim up to one year after the accrual of the cause of action if no substantial prejudice resulted from the later filing and the claimant demonstrates "sufficient reasons constituting extraordinary circumstances" for the late filing. N.J.S.A. 59:8-9.

Here, the actions giving rise to Plaintiff's negligence claim occurred on October 2, 2012 when Plaintiff was notified of his lateral transfer from the Division of Child Behavioral Health Services to the OFM and on October 12, 2012 when Plaintiff's grievance was heard by Defendant Hibner. Plaintiff fails to allege that he filed a Notice of Claim prior to initiating this action on October 31, 2013 even though the burden is on him to show that a notice of claim was timely filed. *Liddell v. N.J. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 175676, at *9 (D.N.J. Dec. 9, 2013) (citing *Bryant v. Nolan*, 2011 U.S. Dist. LEXIS 38050, at *6 (D.N.J. Apr. 7, 2011)). Moreover, as indicated by the Defendants, "[n]o Notice of Tort Claims has ever been filed[.]" (Defs.' Br. at 22). Plaintiff, having filed no response to Defendants' motion, has failed to present any evidence demonstrating his compliance with the NJTCA's notice requirements. Accordingly, this Court lacks subject matter

jurisdiction over the negligence claim asserted in Count Two of Plaintiff's Complaint and that claim is, therefore, dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(1).

### D. Count Three: Conspiracy – Violation of 42 U.S.C. § 1985

In Count Three, Plaintiff alleges that all Defendants conspired to unlawfully reassign him to the OFM in violation of 42 U.S.C. § 1985(3). (Compl. at Count Three, ¶¶ 1-21). According to Plaintiff, Defendants Guenzel and Whittaker "were directly responsible for the reassignment" and Defendants Hibner and Ng "confirmed the unlawful act during the grievance process." (*Id.* at Count Three, ¶¶ 7-9). Plaintiff further surmises that the DCF "had to be aware of this process and did nothing[]" and that his transfer was effectuated "simply because [he] is African American." (*Id.* at Count Three, ¶¶ 10, 15). Based on these allegations, Plaintiff seeks compensatory damages in the amount of $50,000 and punitive damages in the amount of $300,000. (*Id.* at Count Three, ¶ 21).

Defendants argue that Count Three should be dismissed for two reasons. First, Defendants argue that Plaintiff's allegations do not establish a *prima facie* case of civil conspiracy. Specifically, Defendants contend that "Plaintiff cannot meet the first element of a *prima facie* case of civil conspiracy . . . [because] [n]one of the Defendants . . . are 'persons' for purposes of 42 U.S.C.[] § 1985." (Defs.' Br. at 15). Defendants further contend that "Plaintiff fail[s] to allege any facts that would indicate that any of the Defendants entered into an agreement to cause Plaintiff to be transferred from [the Division of] Child Behavioral Health Services to the [OFM]." (*Id.*). Second, Defendants argue that the Eleventh Amendment affords them immunity from Plaintiff's civil conspiracy claim.

Section 1985(3) prohibits conspiracies directed at "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must

allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citations omitted).

It is well established that, under the principles of sovereign immunity, State agencies and State officers acting in their official capacities cannot be sued for damages pursuant to § 1985. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1988). The Eleventh Amendment poses an absolute bar to the filing of suits against the State, with two narrow exceptions, neither of which apply to the present dispute. First, it has long been recognized that a State can waive its immunity from suit and consent to suit in federal court, so long as that consent is unequivocally expressed. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). Second, Congress may exercise its power under § 5 of the Fourteenth Amendment to override a State's immunity. *Fitzpatrick*, 427 U.S. at 456. However, the Supreme Court has required an "unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several states." *See Pennhurst*, 465 U.S. at 99 (citing *Quern*, 440 U.S. at 342). The Supreme Court has found that Congress did not intend to override State sovereign immunity with the passage of § 1985. *See Quern*, 440 U.S. at 343; *Will*, 491 U.S. at 67; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 134 L. Ed. 2d 252, 116 S. Ct. 1114 (1996); *Garcia v. Richard Stockton College*, 2002 U.S. Dist. LEXIS 12492, at *9 (D.N.J. July 11, 2001) ("Nor has Congress expressly abrogated New Jersey's immunity from suit under § 1985(3)). Accordingly, the Court finds that Plaintiff's § 1985(3) conspiracy claim is barred by the Eleventh

Amendment. As such, this Court lacks subject matter jurisdiction over Plaintiff's § 1985(3) conspiracy claim and that claim is properly dismissed pursuant to FED. R. CIV. P. 12(b)(1).

### E.  Count Four: Breach of Contract

In Count Four, Plaintiff alleges that all Defendants breached the Collective Bargaining Agreement ("CBA") with his union, the CWA, by (1) transferring him to the OFM without his consent; (2) declining to consider his level of seniority prior to implementing the transfer; and (3) failing to provide him with sufficient notice of the transfer. (Compl. at Count Four, ¶¶ 8, 10, 13). According to Plaintiff, "[t]hese violation[s] of the CWA contract . . . [constituted] violations of the [Labor Management Relations Act, 29 U.S.C. § 185]." (*Id.* at Count Four, ¶ 25). Based on these allegations, Plaintiff seeks compensatory damages in the amount of $50,000 and punitive damages in the amount of $450,000. (*Id.* at Count Four, ¶ 42).

Defendants seek dismissal of Plaintiff's breach of contract claim on the grounds that Plaintiff has failed to comply with the notice requirements of the New Jersey Contractual Liability Act, N.J.S.A. 59:13-5 ("NJCLA"). Defendants further argue that this Court lacks jurisdiction over Plaintiff's breach of contract claim because Plaintiff failed to exhaust the administrative remedies provided for in the CBA prior to seeking judicial review. Lastly, Defendants argue that Plaintiff's breach of contract claim should be dismissed "as to the Individual Defendants because they are not a party to the [CBA]." (Defs.' Br. at 20). The Court will first address Plaintiff's breach of contract claim as asserted against Defendants Guenzel, Whittaker, Ng and Hibner.

### 1.  Breach of Contract Claim Against Defendants Guenzel, Whittaker, Ng and Hibner

It is settled law that non-parties to a contract cannot be held liable for a breach of that agreement. *See FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994) (finding that non-parties to a contract cannot be found liable for breach of a contractual duty); *Figueroa v. City of Camden*, 580 F.

Supp. 2d 390, 408 (D.N.J. 2008) (finding that employee of city fire department could not be held liable for breach of employment contract between plaintiff and fire department because the employee was not a party to the contract). "[A]s a general rule an action on a contract cannot be maintained against a person who is not a party to it." *Comly v. First Camden Nat'l Bank &Trust Co.*, N.J. Misc. 123, 127 36 A.2d 591 (N.J. Sup. Ct. 1944). Here, the CWA entered into the CBA with the State of New Jersey for the purpose of "the improvement and promotion of harmonious employee relations between the State and its employees represented by the Union." (CWA Collective Bargaining Agreement ("CBA") at Preamble). Plaintiff does not allege that Defendants Guenzel, Whittaker, Ng or Hibner are parties to that CBA. Moreover, the Court has reviewed the CBA that Defendants attached to their Opposition Brief and finds that none of the individual Defendants are parties to that agreement.[5] Accordingly, Plaintiff's breach of contract claim, as plead against Defendants Guenzel, Whittaker, Ng and Hibner, is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

## 2. Breach of Contract Claim Against Defendants State of New Jersey, DCF and CSOC

All suits for violation of collective bargaining agreements are governed by federal law because Congress intended that the scope of obligation in labor contracts in or affecting interstate commerce be uniform *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962). The Supreme Court has held that the preemptive effect of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), is so powerful that it displaces even well-pleaded state causes of action that do not mention § 301 or labor contracts, but that depend for

---

[5] Although a Court's review on a motion to dismiss is typically limited to the allegations in the complaint, exhibits attached to the complaint and matters in the public record, the Court may consider the CBA since the contract is integral to Plaintiff's claims and he does not dispute its authenticity. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (3d Cir. 1993) (stating that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.").

their resolution on interpreting such contracts or are founded directly on labor contract rights. *Id.*; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394-95, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). § 301 preemption does not result in outright dismissal of the state-law claim. Rather, the Court must treat the claim as though it had been pled under § 301. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22-24, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983); *Avco Corp. v. Machinists, Lodge 735*, 376 F.2d 337, 339-340 (6th Cir. 1997), *aff'd*, 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968). Accordingly, the breach of contract claim asserted against Defendants State of New Jersey, the DCF and the CSOC is properly analyzed as a § 301 claim.

"It is well established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract." *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 334 (3d Cir. 1985) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53, 13 L. Ed. 2d 580, 85 S. Ct. 614 (1965). "Failure to exhaust those remedies may be a valid defense to a suit brought by an employee against his employer for a violation of the collective bargaining agreement." *Findley v. Jones Motor Freight*, 639 F.2d 953, 957 (3d Cir. 1981); *see also Manning v. Bouton*, 678 F.2d 13, 16 (3d Cir. 1982) ("Being bound by the collective bargaining agreement, [Plaintiff] was not free to ignore the procedures it specifies for the pressing of grievances by bringing suit in federal court."). Aggrieved employees "must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*'" *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1537 (3d Cir. 1992) (quoting *United Steelworkers of Amer. v. Warrior & Gulf Navigation, Co.*, 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) (emphasis added)).

The CBA in the present case sets forth a Three Step Grievance Process to be followed if a member claims a "breach, misinterpretation or misapplication" of the terms of the CWA Agreement. (*See* CBA, art. 4, § B.1.a). If a grievance is not resolved informally, Step One permits "the grievant or the Union . . . [to] submit the grievance in writing to the office or individual designated by the Department." (*Id.* at art. 4, § C.2.a). The Department is then required to schedule a grievance meeting within ten days of the filing and a "written decision [is required to] be rendered by management within ten . . . days of the grievance meeting." (*Id.* at art. 4, § C.2.b-c). If the grievant or the Union is not satisfied with the Step One disposition, under Step Two, the grievance may be appealed to the Department Head or designee. (*Id.* at art. 4, § C.3.a). If the grievance "has not been satisfactorily resolved at Step Two, . . . then arbitration may be brought only by the Union" at Step Three. (*Id.* at art. 4, § C.4.a). "The decision or award of the arbitrator shall be final and binding consistent with applicable law and [the CWA] Agreement." (*Id.* at art. 4, § C.4.d).

Here, after viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to exhaust the grievance and arbitration provisions of the CWA Agreement prior to initiating this action. While Plaintiff alleges that he "filed a grievance . . . [which] was heard on October 12, 2012 . . . [in a hearing] chaired by Defendant . . . Hibner[,]" and subsequently appealed that decision pursuant to Step Two of the CWA Agreement, (Compl. at 5), he fails to allege that the CWA requested arbitration on his behalf as required at Step Three of the Grievance Process. Since Plaintiff has failed to exhaust his administrative remedies by pursuing the grievance procedures of the CWA Agreement, this Court lacks subject matter jurisdiction to entertain Plaintiff's breach of contract claim. Accordingly, to the extent that Plaintiff's breach of contract claim is asserted against Defendants State of New Jersey, the DCF and the CSOC, that claim is properly dismissed pursuant to FED. R. CIV. P. 12(b)(1).

### F.  Count Five: Defamation

In Count Five of his Complaint, Plaintiff asserts a defamation claim against all Defendants. Specifically, Plaintiff contends that his transfer to the OFM was "demeaning" and constituted "an attack on [his] reputation[,] . . . economic opportunity[, and] sense of well-being." (Compl. at Count Five, ¶¶ 20, 24-26). Defendants argue that Plaintiff's defamation claim should be dismissed for three reasons. First, Defendants argue that Plaintiff failed to file a notice of claim as required by the NJTCA. Second, Defendants argue that the NJTCA provides them immunity from "injury resulting from the exercise of judgment or discretion vested in" a public entity or public employee. N.J.S.A. 59:2-3, 59:3-2. Third, Defendants argue that Plaintiff failed to file his claim within the one year statute of limitation prescribed by N.J.S.A. 2A:14-3.

As previously discussed, the NJTCA bars a plaintiff from recovering against a public entity or employee if he or she fails to file a notice of claim within ninety days of the claim's accrual. *See* N.J.S.A. 59:8-8. Here, Plaintiff's Complaint fails to allege that he filed a notice of claim prior to initiating this action. Accordingly, and for the same reasons discussed above in addressing Plaintiff's negligence claim, the Court finds that it lacks subject matter jurisdiction over the defamation claim asserted in Count Five of Plaintiff's Complaint and, therefore, that claim is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(1).

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's Complaint is granted. Defendants' alternative Motion for a More Definite Statement is dismissed as moot. An appropriate Order follows.

Date: August 25, 2014

PETER G. SHERIDAN, U.S.D.J.

22